Abraham BALLARD, a/k/a Lawrence
Upchurch, Petitioner;

v.

Hans WALKER, Superintendent of Au-
burn Correctional Facility and Robert
Abrams, Attorney General of the State
of New York, Respondents.

No. CV 90–3217.

United States District Court,
E.D. New York.

Aug. 27, 1991.

Jonathan C. Scott, Northport, N.Y., for petitioner Abraham Ballard.

James Catterson, Suffolk County Dist. Atty. by Guy Arcidiacono, Riverhead, N.Y., for respondent Hans Walker.

Robert Abrams, New York State Atty. Gen., Dept. of Law, Hauppauge, N.Y., pro se.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner Abraham Ballard, a/k/a Lawrence Upchurch, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's application is denied.

## BACKGROUND

Petitioner was indicted by a grand jury and charged with: three counts of grand larceny in the second degree, in violation of section 155.40 of the New York Penal Law, two counts of grand larceny in the third degree, in violation of section 155.35 of the New York Penal Law, and five counts of fortune telling in violation of section 165.35 of the New York Penal Law. These charges arose out of petitioner's conduct in Suffolk County, New York, where he solicited and received payment for "spiritual services" at various times and in various amounts from Clover Virgo, Doreen Killebrew, Lorraine Hendricks, Theraline Dixon, and Anita Turner, (collectively "complainants").

At trial, the prosecution established its case, in part, by calling the five complainants as witnesses. The complainants all testified that Ballard convinced them that they, or their loved ones, were affected by curses and that he could remove these curses for large sums of money. Each of the complainants paid Ballard for his "services." Ballard indicates that he has the ability to ward off evil spirits and maintains that his services were performed in accordance with his service to God. Following a jury trial, Ballard was convicted of all the charges.

On September 8, 1986, the New York State Supreme Court, Suffolk County, imposed indeterminate sentences of three to six years on each of the second degree grand larceny counts; two to five years on each of the third degree grand larceny counts; and sentences of 90 days on each of the five fortune telling counts. The court also imposed a mandatory surcharge of one hundred dollars. On October 24, 1988, the appellate division affirmed the conviction, 143 A.D.2d 919, 533 N.Y.S.2d 558. Petitioner brought a motion to reargue his direct appeal to the appellate division, which was denied on February 21, 1989. Leave to appeal to the New York Court of Appeals was subsequently denied on April 5, 1989.

Currently, petitioner alleges the following nine grounds in support of his petition: (a) that he was deprived of his constitutional right to the effective assistance of counsel; (b) that he was deprived of the right to a fair and impartial jury trial; (c) that his rights, under the First and Fourteenth Amendments, to the free exercise of religion and the equal protection of the law were violated; (d) that prosecutorial misconduct deprived him of a constitutionally fair trial; (e) that evidence of prior bad acts was improperly admitted, resulting in a constitutionally unfair trial; (f) that at trial there was an unconstitutional shift in the burden of proof; (g) that the prosecution failed to prove him guilty beyond a reasonable doubt; (h) that the jury's verdict was

against the weight of the evidence; and (i) that the sentence was harsh, excessive, cruel, and inhuman under the Eighth Amendment.

Petitioner has exhausted all the remedies available to him in the state court system, as is required in a federal habeas proceeding. *See* 28 U.S.C. § 2254(b). However, respondent contends that petitioner is procedurally barred from obtaining habeas relief for the majority of his claims, and that all nine claims are nevertheless without merit. For the reasons set forth below, this Court finds that, although petitioner is not procedurally barred from raising his claims, each of the grounds advanced in support of the petition are without merit.

## I. PROCEDURAL DEFAULT

■ A petitioner is procedurally barred from seeking habeas relief on the basis of a claim not properly preserved in state court unless he provides an adequate justification excusing this error and demonstrates that prejudice has resulted from the alleged violation for which relief is being sought. *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–2507, 53 L.Ed.2d 594 (1977); *see also Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 2907–2908, 82 L.Ed.2d 1 (1984). In other words, a claim not properly preserved is barred from consideration by a federal habeas court absent a showing of "cause and prejudice." *Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2507.

■ Respondent argues that petitioner herein is procedurally barred from seeking habeas review of the claims involving objections to the prosecutor's closing remarks and to the Court's jury instructions. Respondent correctly asserts that petitioner's trial counsel did not object to either the prosecutor's closing remarks or the court's jury charge. Thus, respondent concludes that habeas review may not be had for these grounds because they were not properly preserved at trial.

In *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Supreme Court declared that "a procedural default does not bar consideration of a federal claim on either direct or habeas review

unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. at 1039 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–2639, 86 L.Ed.2d 231 (1985)). In the instant case, the last state court which rendered a judgment on the issues presented was the appellate division. Although the petitioner's claims were "fairly presented" to the New York Court of Appeals, the Court did not render a judgment on the claims when it denied leave to appeal. *Udzinski v. Kelly*, 734 F.Supp. 76, 81 (E.D.N.Y.1990); *see also Rahming v. Kelly*, No. 89–2620, 1989 WL 101919 (S.D.N.Y. Aug. 28, 1989) (LEXIS, GenFed library, Dist. file).

The appellate division was presented with all of the constitutional issues currently asserted. In its opinion, *People v. Ballard*, 143 A.D.2d 919, 533 N.Y.S.2d 558 (1988), the court only addressed Ballard's arguments that the evidence adduced at trial was insufficient to sustain the jury verdict and that his First Amendment rights were violated. The court concluded its opinion by stating:

> We have examined the defendant's remaining contentions, to the extent that they are properly preserved for appellate review as a matter of law (CPL 470.-05[2] ), and find them to be without merit. Review of those arguments which were not properly preserved is not warranted in the interest of justice. The judgment under review is accordingly affirmed.

*Id.* 533 N.Y.S.2d at 559.

Thus, the appellate division failed to delineate which issues were procedurally barred and which issues were properly preserved. Therefore, this Court finds that the appellate division did not "clearly and expressly" rely on procedural default grounds to dismiss petitioner's prosecutorial misconduct and improper instruction claims. *See Harris*, 489 U.S. at 263, 109 S.Ct. at 1039. Accordingly, this Court must reach the merits of the claims.

## II. THE MERITS OF PETITIONER'S CLAIMS

### A. *Ineffective Assistance of Counsel*

■ It is well established that an indigent criminal defendant is guaranteed the right to counsel. N.Y. Const., art. I, § 6; *People v. Koch*, 299 N.Y. 378, 381, 87 N.E.2d 417, 418 (Ct.App.1949); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). It is equally well settled that an indigent defendant is not entitled to a choice of counsel should he be dissatisfied with the attorney assigned to him unless the defendant can demonstrate "good cause" for the court to assign different counsel. *See, e.g., United States v. Burkeen*, 355 F.2d 241 (6th Cir.), *cert. denied sub nom. Matlock v. United States*, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); *People v. Medina*, 44 N.Y.2d 199, 404 N.Y.S.2d 588, 593, 375 N.E.2d 768, 772–773 (Ct.App.1978). The justification for assigning new counsel is "most compelling" if the defendant can demonstrate that "counsel is unable to provide the defendant effective assistance, as, for example, by reason of professional incompetence or the existence of a personal impediment which handicaps his or her professional performance." *People v. Sawyer*, 57 N.Y.2d 12, 453 N.Y.S.2d 418, 422, 438 N.E.2d 1133, 1137 (Ct.App.1982), *cert. denied*, 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983).

Petitioner herein was assigned John Lardner of the Legal Aid Society of Suffolk County to represent him at trial. Lardner's request to be relieved of the assignment was denied. Petitioner requested that the court assign him a new attorney and this request was also denied. Petitioner asserts that he and Lardner had fundamental differences in their religious ideologies and that counsel was neither prepared nor willing to defend him.

■ An indigent defendant may not delay trial by finding fault with his assigned counsel absent a showing of how the alleged fault would adversely affect the defendant's representation. *People v. Arroyave*, 49 N.Y.2d 264, 425 N.Y.S.2d 282, 286, 401 N.E.2d 393, 396–397 (Ct.App.1980). To that end, it appears rather fundamental that a defense attorney can effectively represent a person with religious beliefs different from his own. Likewise, an assigned counsel who unsuccessfully requests to be relieved from his duty is not incapable of providing effective legal assistance. Petitioner has not demonstrated how the defense counsel's alleged "impediments" precluded him from rendering effective assistance. Petitioner did not show "good cause" for the trial court to assign new counsel, and the court rejected Ballard's apparent dilatory tactics and proceeded with the trial.[1]

The Supreme Court has recognized that the right to counsel guaranteed by the Sixth Amendment is "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), the Court established a two-prong test which a petitioner must meet in order to sustain a claim of ineffective assistance. The petitioner must first show that the counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694, 104 S.Ct. at 2064, 2068. It is to be noted that the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065.

■ Petitioner herein asserts that the representation by his assigned counsel was tantamount to no representation at all.

---

1. The Court gave Ballard the option to proceed *pro se*, with Mr. Lardner as counsel, or with Mr. Lardner available if Ballard chose to represent himself. Ballard accepted the representation of Mr. Lardner. (Tr. 5) ("Tr." refers to the trial transcript in this case).

**1340**

More specifically, petitioner argues that his defense counsel waived an opening statement, did not request a *Sandoval* hearing to obtain a ruling as to the admissibility of defendant's prior crimes, did not present any witnesses, and did not object to either the prosecutor's closing statements or the court's instructions to the jury. Petitioner also insists that counsel did not raise objections to improper questions, and was unable to employ the basic principles involved in defending a criminal charge.

In *Strickland*, the Supreme Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. Respondent claims that defense counsel protected Ballard's rights fully and faithfully. Lardner requested and participated in pre-trial hearings, noted objections during the hearings and the subsequent trial, cross-examined the prosecution's witnesses, presented defense witnesses during the hearings, attempted to clarify Ballard's name change, gave a closing address to the jury, made jury charge requests, and "strenuously objected," *see* Tr. 437, to the introduction of Ballard's prior convictions. The trial record clearly indicates that defense counsel's conduct both before and during trial comported with the adversarial nature of a criminal proceeding, and that counsel provided adequate, effective, and meaningful assistance.

In sum, this Court finds that defense counsel provided petitioner with the effective assistance of counsel guaranteed by the Sixth Amendment. Accordingly, petitioner's argument that he was denied effective assistance of counsel is rejected.

**B. *Free Exercise and Equal Protection Claims***

Petitioner contends that he was prosecuted for exercising his religious beliefs and that his conviction is tantamount to religious persecution. He claims to be a soldier in the Army of his Lord, and that his actions were performed in accordance with his obedience to God.

■ The First Amendment to the Constitution protects an individual's right to freely exercise his or her religious beliefs. The government may intrude upon an individual's exercise of his religious beliefs only upon a showing of a compelling and overriding governmental interest. *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–2149, 104 L.Ed.2d 766 (1989); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141, 107 S.Ct. 1046, 1049, 94 L.Ed.2d 190 (1987); *Thomas v. Review Bd., Indiana Employment Security Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981).

The Supreme Court has repeatedly held that a claim of religious freedom cannot be used as a shield for unlawful behavior. *See Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *see also Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); *Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1944). In *Cantwell*, the Court acknowledged the freedom to believe, but cautioned that "[n]othing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public." 310 U.S. at 306, 60 S.Ct. at 904.

Likewise, New York law has refused to give First Amendment protection to people who use their religious belief as a smoke screen for their illegal behavior. Article I, section 3 of the Constitution of the State of New York provides that:

The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify

practices inconsistent with the peace or safety of this state.

■ The evidence adduced at trial established that petitioner's promises to cure the complainants' spiritual problems were deliberate lies made with fraudulent intent. Even if petitioner's religious beliefs were bona fide, Ballard still does not present an adequate defense for the crimes for which he was convicted. Recently, in *Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, *reh'g denied,* —— U.S. ——, 110 S.Ct. 2605, 110 L.Ed.2d 285 (1990), the Supreme Court ruled that a state would be unconstitutionally infringing upon an individual's free exercise of religion if it "sought to ban ... acts or abstentions only when they are engaged in for religious reasons, or only because of the religious belief that they display." *Id.* 110 S.Ct. at 1599. That is not the case herein.

The crimes of grand larceny and fortune telling were not enacted to restrict religious beliefs. The fortune telling statute, in particular, was designed to protect against "a prevailing species of fraud whereby its practitioners, professing occult powers of prognostication, annually bilk a gullible public of many millions of dollars." *See* N.Y.Penal Law § 165.35 (McKinney 1988) (practice commentary at p. 254). More particularly, the statute itself is directed at all fortune telling activity; it is not limited to fortune telling arising out of one particular religious practice. Therefore, petitioner's contention that a conviction based on the performance of his "ministerial services" was unconstitutional is without merit. In short, petitioner's actions do not provide a defense to the crimes of grand larceny or fortune telling. Therefore, habeas relief must be denied on this ground.

C. *Right to a Fair and Impartial Jury Trial*

Petitioner claims that he was denied his right to a fair and impartial jury trial. More particularly, he contends that: (1) the court abused its discretion when it denied him the opportunity to locate and to bring forth defense witnesses when he was denied reasonable bail; (2) the jury was not a jury of his peers in that they did not subscribe to the fundamental tenets, precepts, and doctrines of his faith; (3) prior bad acts by Ballard were improperly admitted into evidence; (4) the Court's "inflammatory" instruction to the jury buttressed the prejudicial effect of the evidence of Ballard's prior bad acts; and (5) the prosecutor's actions during the trial constituted prosecutorial misconduct. The Court will address each claim *seriatim.*

1. Excessive Bail

■ The Eighth Amendment protects defendants against the imposition of excessive bail. A court's primary purpose for ordering bail is to ensure that a defendant will appear in court when such attendance is required. Factors which a court considers when determining a fair amount for bail include the defendant's character and reputation, his financial resources, his criminal record, and the sentence which may be imposed upon conviction. See N.Y.Crim. Pro.Law § 510.30(2)(a) (McKinney 1984 & Supp.1991). Petitioner herein had been convicted previously and was facing charges which carried maximum sentences aggregating to fourteen and one-half to twenty-nine years. His bail was originally set at $50,000, was later reduced to $5,000, and thereafter increased to $25,000. This Court finds that the trial judge did not abuse his discretion by ordering these sums as bail.

■ Petitioner's claim that he was denied the opportunity to locate and bring forth defense witnesses as a result of his "unreasonable" bail is also without merit. The trial record indicates that Ballard made no attempt to contact his attorney while in prison. In addition, the record shows that Ballard was not prevented from locating witnesses through the services of his court-appointed attorney. Therefore, this claim is without merit.

### 2. Impartial Jury

The Sixth and Fourteenth Amendments require that a jury be selected in an impartial manner and should represent a reasonable cross section of the community. To make out a prima facie claim that the composition of a jury violated a defendant's due process rights, the defendant has the burden of showing that the process used to select the jury pool " 'systematically excluded' " a "substantial and identifiable segment of the community." *People v. Guzman*, 60 N.Y.2d 403, 469 N.Y.S.2d 916, 919, 457 N.E.2d 1143, 1146 (Ct.App.1983) (citing *Peters v. Kiff*, 407 U.S. 493, 503–504, 92 S.Ct. 2163, 2168–2169, 33 L.Ed.2d 83 (1971); *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668–669, 58 L.Ed.2d 579 (1979)), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984). Petitioner has made no attempt to show that people with religious principles similar to his own have been "systematically excluded" from the jury pool. Therefore, habeas relief may not be granted on this ground.

### 3. Evidence of Prior Bad Acts

Generally, under New York law evidence received in the course of a prosecution for one offense may not be used in the prosecution of the same person for a different offense. Put simply, evidence of prior crimes may unduly prejudice a jury to convict a person for past criminal behavior. *Coleman v. New York*, 55 N.Y. 81, 90 (Ct.App.1873). However, in *People v. Molineaux*, 168 N.Y. 264, 61 N.E. 286 (1901), the New York Court of Appeals adopted five exceptions to the rule espoused in *Coleman*. *Molineaux* permits the admission of evidence of prior crimes to prove the crime charged when the evidence tends to establish motive, intent, absence of mistake or accident, a common plan or scheme, or the identity of the person charged with the commission of the crime. *Id.* at 293, 61 N.E. 286. In the instant case, petitioner's intent was a central theme at trial. Conviction for larceny requires a showing that the defendant had the "intent to deprive another of property...." N.Y.Penal Law § 155.05(1) (McKinney 1988). A conviction for fortune telling requires a showing that a person "claim[ed] or pretend[ed] to tell fortunes, or h[eld] himself out as being able, by claimed or pretended use of occult powers, to answer questions or give advice on personal matters or to exorcise, influence of affect evil spirits or curses...." N.Y.Penal Law § 165.35 (McKinney 1988).

In *People v. Ely*, 68 N.Y.2d 520, 510 N.Y.S.2d 532, 503 N.E.2d 88 (1986), the New York Court of Appeals acknowledged that the *Molineaux* exceptions are subject to limitations. For example, the probative value of the evidence sought to be admitted must outweigh its potential for prejudice. *Id.* at 536, 503 N.E.2d at 92 (citations omitted). Only evidence "inextricably interwoven" with the issue in the instant case should be admitted. *Id.* (citations omitted). Lastly, evidence must not be unnecessary to the People's case, *id.* (citing *People v. Robinson*, 68 N.Y.2d 541, 510 N.Y.S.2d 837, 840–41, 503 N.E.2d 485, 488–89 (1986)), or merely cumulative. *Id.*

The petitioner's prior convictions were very similar to the crimes he faced at trial. The prosecutor introduced a copy of a conviction in which Ballard pled guilty for breach of trust with fraudulent intention in South Carolina. A person who commits a breach of trust with a fraudulent intention in South Carolina is guilty of larceny. See S.C.Code Ann. § 16–13–230 (Law Coop.1991). The prosecutor also moved into evidence a certification that petitioner pled guilty to two counts of theft in Maryland. Conduct designated as theft in Maryland constitutes a single crime including larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting, and receiving stolen property. See Md.Ann.Code art. 27, § 341 (1990). Petitioner argues that these charges were remote in time and space from the crimes charged and the potential for prejudice far outweighed the probative value derived from the admission of these convictions.

There are some factors which may be used to determine whether the level of probativeness of the petitioner's prior convictions outweighed any resulting preju-

dice. One factor is the degree to which the convictions persuaded the jury that petitioner had the same culpable intent in the prior convictions as in the crimes for which he is currently charged. Another factor is the logical proximity between the prior convictions and the issue of intent at the trial. *See People v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S.2d 261, 264, 420 N.E.2d 59 (Ct. App.1981). Ballard pled guilty to the breach of trust count in October of 1984 and the larceny counts in April of 1985. The trial in the instant case commenced on April 8, 1986. Both of petitioner's prior crimes involved the wrongful deprivation of property. Petitioner's plea of guilty in Maryland preceded the acts of larceny for the conviction at issue by less than a year. In light of that, this Court finds that the evidence of the prior convictions was not attenuated and was more probative than prejudicial.

The evidence of Ballard's prior convictions is "inextricably interwoven" with the issue of intent in the instant case. Although petitioner's convictions were in foreign jurisdictions, those crimes and the crimes for which he was convicted in New York all involved fraud and deceit in an effort to deprive others of their property. Likewise, the evidence was not cumulative and was not unnecessary to the prosecution's case. Accordingly, this Court finds that the evidence of Ballard's prior convictions was properly admitted into evidence. Therefore, petitioner's fifth claim is without merit.

### 4. Trial Court's Instruction

■ Petitioner claims that the trial court's comments and instructions had the effect of usurping the jury's fact-finding power on the issue of intent. To convict a person for larceny by false pretense, New York law requires a finding "based only upon evidence establishing that the facts and circumstances of the case are wholly consistent with guilty intent or belief and wholly inconsistent with innocent intent or belief, and excluding to a moral certainty every hypothesis except that of the defendant's intention or belief that the promise would not be performed." N.Y.Penal Law

§ 155.05[2][d] (McKinney 1988). When the trial court allowed the prosecution to introduce copies of Ballard's prior convictions into evidence, the court gave the following limiting instruction:

> Madam Forelady and member [sic] of the jury, under certain circumstances a prior conviction can be introduced by the People to overcome the burden of establishing intent or lack of mistake. It is not to show that the Defendant is a bad person or an undesireable person, but because of the conviction or convictions, whatever the probability of a mistake is lessened in your opinion because you will have to determine, as I will go into great detail, both to justify a conviction that the Defendant must have intended to do what he is charged with, and this is a way of doing it, one way of doing it.

Tr. at 441–42. Petitioner contends that this instruction allowed the jury to convict the defendant on his propensity to commit crimes rather than allow the jury to decide on the merits of the case.

■ Under New York law, a court's instruction may not allow a jury to draw an impermissible legal presumption. *People v. Barr*, 75 A.D.2d 14, 428 N.Y.S.2d 116 (4th Dep't 1980). A reviewing court must examine the words actually spoken to the jury and interpret them as a reasonable juror would. *Id.* 428 N.Y.S.2d at 117. The instructions as given by the trial court accurately describe the weight that can be given to *Molineaux* evidence. If intent constitutes a main component of a crime, "previous offenses of a similar character by the same person may be proved to show intent." *Molineaux*, 168 N.Y. at 297, 61 N.E. at 296 (citations omitted). The Court's instructions did not deny petitioner a fair trial and did not afford the jury an opportunity to draw an impermissible legal presumption. Therefore, habeas relief cannot be granted on this ground.

### 5. Prosecutorial Misconduct

■ Petitioner argues that the prosecutor made improper remarks during summation which deprived Ballard from receiving

a constitutionally fair trial. The evidence adduced at trial established that Ballard solicited $250 from complainant Lorraine Hendricks to ensure that she got custody of her son in a divorce proceeding. Petitioner contends that the prosecutor improperly withheld from the jury the outcome of the custody award and misled the jury into believing that Ballard was guilty of making a false promise. Ballard also asserts that the prosecutor appealed to the sympathy of the jury and convinced the jury to convict him based on propensity.

In summation, a prosecutor has the discretion to withhold information from the jury which has no bearing on the legitimate issues of the case. *People v. Ashwal,* 39 N.Y.2d 105, 383 N.Y.S.2d 204, 206, 347 N.E.2d 564, 566 (Ct.App.1976). Therefore, the prosecutor was under no obligation to present to the jury the outcome of the custody proceeding. This Court finds that withholding this information did not constitute improper conduct.

Upon a thorough review of the record, this Court also finds that all of the prosecutor's statements made during summation were permissible. The prosecutor gave a permissible explanation of the crimes to which Ballard pled guilty. The prosecutor properly qualified his explanation of these crimes to the jury by stating: "This is what [Mr. Ballard] *apparently* pled guilty to on April 2, 1985." Tr. 443 (emphasis supplied). The prosecutor's information was based entirely on the uncontested report made by the victim to police.

Habeas relief may not be granted for the alleged impropriety of a prosecutor's statements "unless the errors, either singly or together, were so fundamentally unfair as to deny the defendant a fair trial." *Orr v. Schaeffer,* 460 F.Supp. 964, 967 (S.D.N.Y.1978) (citations omitted). In the case at bar, the prosecutor's summation was fundamentally fair and did not raise any constitutional issues. Therefore, habeas relief is denied on the ground of prosecutorial misconduct.[2]

**2.** This Court's finding that the prosecutor's alleged errors were not of constitutional magnitude is strengthened by the fact that neither the defense counsel nor the trial court objected to

### D. *Shift in The Burden of Proof*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). A jury instruction that shifts the burden of proof from the prosecution to the accused violates the defendant's due process rights. *Sandstrom v. Montana,* 442 U.S. 510, 521, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979). Petitioner herein contends that the trial court improperly shifted the burden of proof from the prosecution on the issue of larcenous intent. To that end, Ballard claims that the admission of his prior convictions placed an improper burden upon him to explain the convictions and convince the jury of his innocence.

This Court has already determined that the admission of Ballard's prior convictions was proper. At several times during its instruction to the jury, the trial court reminded the jurors that it was the prosecutor's burden to prove the intent of the defendant to commit the crime beyond a reasonable doubt. The court instructed, in part, that:

> [T]he reason for the introduction of these two convictions was to show a course of conduct which would indicate the establishment of the intent to defraud as they [the People] allege, that it wasn't a mistake that it happened, that it happened before. *The burden, of course, is on the People to prove the intent of the Defendant beyond a reasonable doubt.*
>
> If you find, from the evidence, that the Defendant [did] not have a conscious objective to bring about the violation of law, the larceny, then you must find the Defendant not guilty of larceny.

Tr. at 522 (emphasis added). At another point, the trial court emphasized that: "this

the prosecutor's statement. *Orr,* 460 F.Supp. at 967; *Malley v. Manson,* 547 F.2d 25, 28 (2d Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977).

burden of proof never shifts. In other words, it rests upon the shoulders of the People throughout the entire trial and never shifts to the shoulders of the Defendant. The Defendant at no time is ever called upon to establish his innocence or to prove any defense whatsoever." Tr. 493. The trial court also charged the jury extensively on intent. *See* Tr. 505–509. Accordingly, this Court finds that at no time did the burden of proof shift from the prosecution to petitioner. Therefore, this ground is without merit.

### E. *Sufficiency of Evidence Claims*

Ballard claims that the prosecution failed to prove his guilt beyond a reasonable doubt and that the jury's verdict was against the weight of the evidence. To sustain a claim that the verdict was against the weight of the evidence, the record must be "so totally devoid of evidentiary support that a due process issue is raised." *Robinson v. Scully*, 683 F.Supp. 941, 943 (S.D.N.Y.1988) (citations omitted). A federal court will not grant habeas relief to a state prisoner challenging his conviction if "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citation omitted). A review of the record in this case indicates that a rational finder of fact could have found Ballard guilty beyond a reasonable doubt of all ten counts of the indictment.

The evidence against Ballard clearly satisfies due process requirements. Five complainants testified that Ballard frightened them into giving him money. Ballard convinced each of the victims that a spell had been placed on them or their loved ones, and for large sums of money, he would be able to relieve them of these curses. Ballard promised to return at least

some of the money to each of the complainants.[3] He never did. A rational fact-finder could easily find that Ballard's intentions were fraudulent and deceptive. Viewing the evidence in a light most favorable to the prosecution, a rational jury could find Ballard guilty as charged; thus, this Court finds that the jury's verdict is supported by sufficient evidence. Petitioner's due process rights have not been violated and habeas relief based upon this ground is denied.

### F. *Cruel and Unusual Punishment*

Petitioner asserts that his sentence was unconstitutionally harsh and excessive, and cruel and inhuman, under the Eighth Amendment. The imposition of a sentence within the guidelines permitted by law does not raise a constitutional question. *United States ex rel. Miller v. LaVallee*, 320 F.Supp. 452, 455 (E.D.N.Y.), *aff'd*, 436 F.2d 875 (2d Cir.1970), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1367, 28 L.Ed.2d 657 (1971). The thirteen to twenty-six year sentence imposed by the trial court is below the maximum sentence permitted by law. Therefore, petitioner's sentence does not raise a constitutional question for which habeas relief may be granted.

### CONCLUSION

For the reasons stated above, this Court finds that each of petitioner's claims in support of his petition are without merit. Accordingly, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.

---

**3.** Mrs. Killebrew's testimony was ambiguous as to whether or not Ballard promised to return some of the money she paid for Ballard's "services." After cross-examination, she conceded that she could not remember if she was ever told that she would get anything back. (Tr. 428). On direct examination, she testified that Ballard told her that he was going to return her money. Viewing this ambiguous evidence in a light most favorable to the People, this Court finds that the record supports the jury's verdict.