Tracy DURDEN, Petitioner,

v.

Gary GREENE, Superintendent,
Great Meadow Correctional
Facility, Respondent.

No. 06 Civ. 2580 (VM).

United States District Court,
S.D. New York.

June 26, 2007.

Tracy Durden, Great Meadows Correctional Facility, Comstock, NY, Pro Se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

### I. INTRODUCTION

Pro se petitioner Tracy Durden ("Durden") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Durden was convicted in New York State Supreme Court, New York County (the "trial court"), of one count of robbery in the second degree in violation of New York Penal Law § 160.10(1) and sentenced to imprisonment for a determinate term of 12 years. In his petition, Durden asserts the following grounds as basis for habeas relief: (1) the verdict was against the weight of the evidence, (2) the trial court's instruction to the jury that the degree of force used was irrelevant in assessing guilt was erroneous, (3) he was deprived due process due to the trial court's refusal to submit a charge of petit larceny as a lesser

included offense to second-degree robbery to the jury, and (4) he was deprived of effective assistance of appellate counsel. For the reasons set forth below, Durden's petition is DENIED.

## II. BACKGROUND

### A. FACTS AND PROCEDURAL HISTORY[1]

On October 11, 2001, at approximately 2:00 p.m., Durden stole a briefcase containing a computer and other property from the front passenger seat of Peter Eng's ("Eng") automobile, which was parked outside of the Village Nursing Home ("Nursing Home") on West 12th Street in Manhattan. Eng, who was standing outside the driver's side door, chased Durden for a short distance and pushed Durden up against a fence upon catching him. Eng held Durden by his shirt and demanded the return of his briefcase, which Durden held behind his back with one hand while wrestling with Eng with his other hand. As the two men struggled, Durden's co-defendant, Gregory Galberth ("Galberth"), who had been standing behind a nearby dumpster, grabbed Eng's arm and demanded that he release Durden.[2] After a

brief period of continued scuffling, Durden released the briefcase to the ground and fled across the street. Employees of the Nursing Home subdued Galberth and, shortly thereafter, caught Durden several blocks from the scene. They held both men until the police arrived and took Durden and Galberth into custody.

The two men were jointly charged with second-degree robbery under the theory that they aided each other. Durden was also charged with a second count of second-degree robbery, based on the alleged injury to Eng's arm during the robbery. At trial, several witnesses testified that they had observed Durden and Eng struggle over possession of the briefcase before Durden eventually released his control over it. Following the presentation of the State's case, counsel for Durden requested that several lesser included offenses be charged, including robbery in the third degree and petit larceny. The trial court agreed to submit a charge of third-degree robbery, but refused to do the same as to petit larceny, stating that it was "quite clear that there was force."[3] (See Tr. at 269.)

1. The factual summary below is derived from the Trial Transcript ("Tr.") in *People v. Durden and Galberth*, Indictment # 6283/01 (Aug. 19, 2002), and from various submissions of the parties to this Court, as well as their earlier submissions to the state court, namely: Brief for the Defendant–Appellant, dated August 2003 ("Def. Br."); Brief for Respondent, dated February 2004 ("Resp. Br."); Petitioner's Motion for a Writ of Error Coram Nobis, dated November 19, 2004 ("Pet. C.N. Mtn."), attached as Ex. H of Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated October 17, 2006 ("Resp. Dec."); Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated October 17, 2006 ("Resp. Mem."); Petitioner's Traverse, dated November 29, 2006 ("Pet. Trav."); and Petitioner's Memorandum of Law in Reply to

Respondent's Answer to Petitioner's Petition for a Writ of Habeas Corpus, dated April 11, 2007 ("Pet. Mem."). Except where specifically quoted, no further reference to these documents will be made.

2. The extent to which Durden and Galberth were previously acquainted is unclear, but Durden confirmed that the two had been drinking together earlier that day. (See Pet. C.N. Mtn. at 65.)

3. Under the New York Penal Law, an individual is guilty of Petit Larceny when he or she "steals property," but is guilty of robbery in the second-degree when he or she "forcibly steals property when ... [h]e is aided by another person actually present." N.Y. Penal Law § 155.25 and § 160.10(1).

In response to a note from the jury following the original instruction, the court gave a supplemental charge, repeating the original instruction [4] and then adding the following ("Supplemental Charge"):

So, you will recall that I just used the words "he uses or threatens the immediate use of physical force." It doesn't define how much physical force. It just says physical force. So degree does not matter.

Shortly thereafter, the jury returned a verdict convicting Durden of robbery in the second degree (aided by another person actually present) but acquitting him of the charge accusing him of causing physical injury to Eng. The trial court then sentenced Durden to a determinate prison term of twelve years.[5]

Durden appealed his conviction to the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"). Appellate counsel for Durden argued that: (1) Durden's conviction was against the weight of the evidence; (2) the court erred in giving the supplemental instruction that the degree of force used was irrelevant to the jury's consideration; (3) the trial court erred in not charging petit larceny as a lesser included offense; and (4) Durden's sentence was excessive. On March 30, 2004, the Appellate Division unanimously affirmed the conviction. *People v. Durden*, 5 A.D.3d 333, 775 N.Y.S.2d 248 (2004). The court found that the evidence established that Durden "used force in an effort to retain the briefcase he has stolen from [Eng] and was aided by 'another person actually present,' as required for a conviction of robbery in the second degree." *Id.* The Appellate Division also found there was no reasonable view of the evidence that Durden had committed petit larceny but not forcible robbery, thus rendering the trial court's refusal to submit petit larceny to the jury proper. The court then found that the supplemental instruction as to the degree of force necessary to fulfill the element of "forcibly steal" was not erroneous, but rather had "adequately conveyed the applicable principles of law." *Id.* Finally, the Appellate Division found "no basis for reducing the sentence." *Id.*

Abigail Everett ("Everett"), of the Center for Appellate Litigation, filed an application letter with the New York Court of Appeals, seeking leave to appeal and asking that court "to review all of the arguments made to the Appellate Division." (*See* Application Letter of Abigail Everett, dated April 2, 2004, attached as Ex. D of the Resp. Dec.) In the letter, counsel also noted in particular Durden's claim that he had "suffered great prejudice" from the trial court's refusal to submit a charge of petit larceny to the jury. *Id.* The letter was addressed to the Chief Judge of the Court of Appeals (pursuant to N.Y.Crim. Proc. Law § 460.20) and enclosed with it copies of the briefs filed in the Appellate Division. On May 19, 2004, the Court of

---

4. The original charge concerning the element of forcible taking was as follows:

A person forcibly steals property and commits robbery when, in the course of wrongfully taking, obtaining or withholding property from the owner thereof with intent to deprive another of the property or to appropriate the same to himself or to a third person, he uses or threatens the immediate use of physical force upon another for the purpose of, (1) preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking, or, (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the stealing of property.

5. Galberth was also convicted of one count of robbery in the second degree (aided by another person actually present) and also sentenced to 12 years' imprisonment.

418

Appeals denied the application. *See People v. Durden*, 2 N.Y.3d 798, 781 N.Y.S.2d 297, 814 N.E.2d 469 (2004). Durden's subsequent pro se motion seeking reargument of the Court of Appeals' denial of leave was also denied, on July 15, 2004. *See People v. Durden*, 3 N.Y.3d 658, 782 N.Y.S.2d 700, 816 N.E.2d 573 (2004).

Following the initial denial of leave by the Court of Appeals, Durden filed a motion for a writ of error coram nobis, claiming ineffective assistance of appellate counsel. He asserts that Everett failed to comply with Rule § 500.20(a)(4)[6] of the Court of Appeals, in that she did not identify the discrete issues to which she sought leave in her leave application on Durden's behalf to the Court of Appeals. He also asserted that Claudia Trupp, his attorney on direct appeal to the Appellate Division, was ineffective for failing to include Durden's suggested arguments in her brief.[7] The Appellate Division denied the motion on June 14, 2005. *People v. Durden*, 3 N.Y.3d 658, 782 N.Y.S.2d 700, 816 N.E.2d 573 (2004). Durden has not sought leave to appeal the denial of the motion to the New York Court of Appeals.

## B. *TIMELINESS*

Under 28 U.S.C. § 2244(d)(1), a one-year limitation period applies for state prisoners seeking federal habeas corpus review. The limitation period began running when Durden's conviction became final, on October 15, 2004, the date his time to seek a writ of certiorari to the Supreme Court challenging the ruling of the highest state court affirming his conviction expired. However, "[t]he time during which a properly-filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). *See also Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006).

Thus, the limitations period was tolled during the time that Durden's motion for a writ of error coram nobis was pending, from November 19, 2004 to June 14, 2005. As thirty-five days passed between the date Durden's conviction became final and his filing of the coram nobis motion, and an additional 278 days elapsed between the denial of that motion and the filing of the habeas petition, a total of 313 days are to be charged to Durden. Thus, the limitations period of § 2244(d) has not been exceeded and the instant petition was timely filed.

## III. *DISCUSSION*

### A. *LEGAL STANDARDS FOR HABEAS RELIEF*

A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution, federal law, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Before seeking federal relief, however, a petitioner must exhaust all available state court remedies. *See* 28 U.S.C. §§ 2254(b) and (c). This standard generally requires that the petitioner "fairly present" his claims to the highest available state court, "setting forth all of the factual and legal allegations he asserts in his federal petition." *Daye v. Attorney Gen.*, 696 F.2d 186, 191–92 (2d Cir.1982) (internal citations omitted).

---

6. Formerly, Rule § 500.10(b)(4).

7. Durden has apparently abandoned his claim as to the assistance of Ms. Trupp, referring

only to the actions of Ms. Everett as grounds for relief in his Petition for a Writ of Habeas Corpus.

Three of Durden's four claims are clearly exhausted. The claims regarding insufficient evidence, erroneous jury instruction, and failure to charge petit larceny were each raised in the Appellate Division "in terms so particular as to call to mind a specific right protected by the Constitution." *Id.* at 194; *see* Def. Br. at 14–30. Durden later sought leave to appeal their rejection to the New York Court of Appeals, the highest available state court, thereby exhausting his state court remedies on each of these three claims.

Durden's fourth ground on which he bases his habeas petition, ineffective assistance of appellate counsel, is unexhausted, for he failed to seek leave to appeal the Appellate Division's denial of his coram nobis petition to the Court of Appeals. However, as discussed below, this claim should be deemed exhausted but procedurally barred.

A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on procedural grounds. A state court adjudicates a petitioner's federal claims "on the merits" under 28 U.S.C. § 2254(d) when it: (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). A claim resolved on the merits is finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311; *see also Castillo v. Walsh,* 443 F.Supp.2d 557, 562 (S.D.N.Y. 2006). There is no indication that the Appellate Division and Court of Appeals denied Durden's claims on anything other than substantive grounds. Thus, this Court finds Durden's appeals to have been adjudicated on the merits.

Where a state court has decided a petitioner's federal claims on the merits, this Court may grant habeas relief only if the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Henry v. Poole,* 409 F.3d 48, 67 (2d Cir.2005).

### B. APPLICATION TO DURDEN'S CLAIMS

#### 1. *Weight of Evidence Claim*

Durden asserts that evidence shows only that he used force in an attempt to escape, not in an attempt to retain the briefcase. (*See* Pet. Mem. at 4, 6; Pet. Trav. at 4–5.) He also argues that the evidence failed to establish that his co-defendant, Galberth, intended to aid in the theft of the briefcase, leaving the "aided by another person actually present" provision of N.Y. Penal Law § 160.10(1) unfulfilled.

■ It is well-established that "weight of the evidence" claims are not cognizable on federal habeas review, given the difference between such a challenge and that of a challenge based on the sufficiency of the evidence. "Specifically, the weight of the evidence argument is a pure state law claim ... whereas a legal sufficiency claim is based on federal due process principles." *Douglas v. Portuondo,* 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (*quoting Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

■ However, the Court notes that Durden is a pro se litigant. As such, his submissions must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449

U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citation omitted). The Court must read his submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citation omitted). In framing this claim in the Appellate Division, Durden asserted that his due process rights, guaranteed by the Fourteenth Amendment to the United States Constitution, had been violated. *See* Def. Br. at 15. Durden can indeed be said to have framed his claim "in terms so particular as to call to mind a specific right protected by the Constitution." *Daye*, 696 F.2d at 194. A pro se litigant's failure to properly label a particular claim should not bar review of the argument where the claim is soundly developed in all other respects. This Court will therefore construe Durden's first claim to be a challenge to the legal sufficiency of the evidence, which is cognizable upon habeas review. *See Douglas*, 232 F.Supp.2d at 116.

Durden's claim was fairly presented to the highest available state court; thus, it is exhausted and reviewable by a federal habeas court. As a challenge to the legal sufficiency of the evidence, the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is applicable: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. 2781 (emphasis in original).

Under 28 U.S.C. § 2254(e)(1), factual determinations made by the state court are presumed to be correct, and the petitioner carries the burden to rebut this presumption by clear and convincing evidence. Consequently, this Court will not set aside those findings unless "the material facts were not adequately developed" or the factual determinations are not fairly supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir.1999). A habeas court must view the evidence in a light most favorable to the state and grant relief to the petitioner only if "no rational trier of fact" could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) (*citing Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781).

In pointing to a few inconsistencies [8] between the testimony of the witnesses, Durden has not met this heavy burden. (*See* Pet. Trav. at 4.) The evidence presented at trial was clearly sufficient to warrant reasonable jury findings that Durden was in fact struggling with Eng to retain the briefcase and that Galberth did intend to aid Durden in robbing Eng. Indeed, there was testimony from multiple witnesses that Durden and Eng engaged in a "tug-of-war" over the briefcase, scuffling with each other for possession. (*See* Tr. at 169, 185–86; Res. Mem. at 3.) There was also testimony that Galberth rushed to Durden's aid, joining the melee by grabbing Eng's arm and order-

---

8. Eng testified that he observed Durden take the briefcase just as he (Eng) was getting out of his car, immediately after parking the car. (*See* Tr. at 30). However, Daniel McClellan, director of security for the Nursing Home, testified that he had previously seen Eng inside the building a short time before the theft occurred. (*See* Tr. at 130). Another witness, Adelma Garcia, a nurse, stated that she observed Durden rummaging through Eng's car for approximately "five to ten minutes" before Eng appeared and then discovered Durden. (*See* Tr. at 200). While the Court notes the apparent inconsistencies, it finds that they bear little or no relevance to the pertinent issues: the purpose for which force was used on Eng by Durden and whether Galberth aided Durden.

ing him to "Let him [Durden] go, let him go." (*See* Tr. at 45.)

Since Durden's claim must be construed as a challenge to the legal sufficiency of the evidence, this Court will not delve into "weighing the relative probative force of conflicting testimony." (*See* Def. Br. at 15 (*citing People v. Bleakley,* 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672, 674–75 (1987))). Such "assessments of the weight of evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments on both of these issues." *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir. 1996); *see also Garrett v. Perlman,* 438 F.Supp.2d 467, 470 (S.D.N.Y.2006). Thus, despite any inconsistencies between the testimony of Eng and other witnesses noted above, this Court should not and will not purport to supplant the jury's role as the trier of fact. That the jury was able to reconcile the discrepancies in witness testimony with an ultimate finding of guilt does not render their verdict irrational and warranting rejection on habeas review.

It is clear that Durden's federal due process rights were not violated, and the adjudication of his claim did not result in a decision based on an unreasonable determination of the facts. Therefore, despite Durden's various attacks upon the validity of the evidence presented during his trial, his challenge to the legal sufficiency of the evidence must be rejected.

### 2. *Degree of Force Instruction*

■ Durden argues that the trial court's supplemental charge to the jury, insofar as it stated that the degree of force is irrelevant to satisfying the element of "forcibly steal" contained in N.Y. Penal Law § 160.10, effectively directed a verdict against him, thereby violating his Sixth Amendment right to have a jury decide each of the charges against him, as well as his due process rights. Essentially, Durden's claim is that it is misleading to say that "degree does not matter," for jurors may assume that this means any physical contact is sufficient to fulfill the element of force.

■ In order for this claim to succeed, the jury charge must not only be a misstatement of state law, but also violate Durden's due process rights. "An erroneous state jury instruction is typically grounds for federal habeas relief only if it 'so infected the entire trial that the resulting conviction violates due process.'" *Valtin v. Hollins,* 248 F.Supp.2d 311, 316 (S.D.N.Y.2003) (*citing Blazic v. Henderson,* 900 F.2d 534, 541 (2d Cir. 1990)); *see also Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004); *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In making this determination, the main and supplemental jury charges are viewed as a whole, not in artificial isolation. *See Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

Certainly the main charge contains no objectionable language; a federal habeas court upheld a charge containing very similar language in *Hill v. Senkowski,* 409 F.Supp.2d 222, 231 (N.D.N.Y.2006).[9]

9. The jury instruction upheld in *Hill* was as follows:

According to the law[,] a person forcibly and intentionally steals property when in the course of committing a larceny he uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of the property, or to the retention thereof immediately after the taking, or compelling the owner of such property or another person to deliver up the property, or to engage in other conduct which aids in the commission of the larceny.

When viewed in the light of this initial instruction, the trial court's supplemental charge was a meaningful response to the jury's request for an explanation of the degree of force required to convict Durden. Indeed, the statute defining the offense of robbery in the second degree does not require any particular degree of force, only that the defendant "forcibly steal property." N.Y. Penal Law § 160.10. Given the decision of the state legislature not to require any specified level of force to convict an individual of second-degree robbery, it cannot be said that the statement "degree of force does not matter," especially when viewed in light of the entire charge, is a misstatement of state law.

Moreover, the supplemental charge, even when considered on its own, does not imply that mere touching is force. Thus, Durden's case differs from *People v. Cherry*, 49 A.D.2d 860, 374 N.Y.S.2d 312 (1975), which was cited in Durden's brief in the Appellate Division. In *Cherry*, the trial court instructed the jury that "mere 'touching' of the victim was the equivalent of physical force." *Id.* Here, the trial court did not state, expressly or impliedly, that "mere touching" was force. Since the statute "just says physical force" (*see* Supplemental Charge, *supra*), the trial court did not incorrectly state the law. Nothing in the trial court's instructions would cause a reasonable trier of fact to view minimal bodily contact as equivalent to physical force. Thus, the supplemental charge did not, as Durden asserts, withdraw from the jury the ability to determine whether he had "forcibly" stolen the briefcase from Eng.

Moreover, even if the jury charge were found not to have "adequately conveyed the applicable principles of law," there is no indication that the instruction deprived Durden of due process. As noted above, *Id.*

there was evidence supporting the jury's determination that sufficient force was exerted by Durden in stealing Eng's briefcase. Even if the instruction was an erroneous statement of state law, there was no "infection" of the trial process leading to a decision "contrary to . . . clearly established Federal law." 28 U.S.C. 2254(d)(1); *see also Cupp*, 414 U.S. at 147, 94 S.Ct. 396.

### 3. *Failure to Charge Lesser Included Offense*

■ Durden also contends that the trial court erred in not charging petit larceny as a lesser included offense to second-degree robbery, thereby depriving him of due process. In essence, the claim is that the court rejected outright Durden's theory—that the element of forcible taking had not been established—by not allowing the jury an opportunity to make its own determination on the issue. Inclusion of the charge of petit larceny, Durden argues, would have enabled the jury to find that no force had been employed in the commission of the theft. In Durden's theory, since petit larceny was not charged, the jury was precluded from drawing such a conclusion.

As noted above, for a claim to merit habeas relief, a petitioner must show that the decision of the state court " . . . was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

While the Supreme Court has held that due process requires the submission of

lesser included offenses in capital cases, it expressly left open the question of whether such a submission is required in non-capital cases. *See Beck v. Alabama,* 447 U.S. 625, 628, n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case."). The Second Circuit has also declined to consider the issue. *See Jones v. Hoffman,* 86 F.3d 46, 48 (2d Cir.1996). Given the determinations of these courts not to rule on the issue, it cannot be said that there is a "clearly established" right under federal law to the submission of lesser included offenses in non-capital cases. *See Williams v. Phillips,* 433 F.Supp.2d 303, 315 (W.D.N.Y.2006); *Peakes v. Spitzer,* No. 04 Civ. 1342, 2004 WL 1366056, at *13 (S.D.N.Y June 16, 2004) *Pritchett v. Portuondo,* No. 02 Civ. 0824, 2003 WL 22472213, at *11 (S.D.N.Y Oct. 31, 2003). Thus, Durden's claim is not cognizable and must be denied.

Moreover, even if the claim were cognizable, there is no "reasonable view of the evidence to support a finding that [Durden] committed the lesser offense but not the greater," as is required under New York law to warrant submission of a lesser included offense. *People v. Glover,* 57 N.Y.2d 61, 453 N.Y.S.2d 660, 439 N.E.2d 376, 377 (1982); *see* N.Y.Crim. Proc. Law § 300.50(1)(2); *see also Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) ("Due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction."). Since there is no reasonable view of the evidence that suggests Durden did not use force to steal the

briefcase or used force exclusively in an attempt to escape, Durden's claim would fail even if it were cognizable.

### 4. *Ineffective Assistance of Appellate Counsel*

Finally, Durden claims that Everett, his appellate counsel, was ineffective because she failed to identify the issues as to which she sought leave to appeal in her leave application to the New York Court of Appeals. This claim is unexhausted, for Durden has not sought leave to appeal the Appellate Division's denial of his coram nobis motion. Typically, this determination would end this Court's analysis, as the claim has not been "fairly presented" to the highest available state court. *See Daye,* 696 F.2d at 191–92.

■ However, since the Durden's time to seek such leave to appeal has expired,[10] his claim may be deemed exhausted. "For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' ... In such a case, a petitioner no longer has any 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir. 1991) (*quoting Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Thus, "even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law." *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (*citing Grey,* 933 F.2d at 120).

---

**10.** An appeal from the denial of a coram nobis motion must be taken within thirty days, with the possibility of an extension for one year additionally. N.Y.Crim. Proc. Law § 460.10(5)(a); § 460.30. More than a year and thirty days have passed since the Appellate Division denied Durden's motion (on June 14, 2005); Durden's time to seek leave to appeal has expired. (*See* Resp. Mem. at 19.)

■ In such procedural default cases, a federal habeas court may review a petitioner's claims only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Day v. Taylor,* 459 F.Supp.2d 252, 256 (S.D.N.Y.2006). As to the first test, "cause" is defined as "some objective factor external to the defense" that impeded the defendant's efforts to raise the claim. *See McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (*quoting Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To demonstrate prejudice, the petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also Day,* 459 F. Supp 2d at 256.

■ Durden cannot satisfy the cause and prejudice standard. He gives no explanation regarding any cause for his failure to seek leave to appeal, citing no factor that thwarted his efforts to raise the claim. While a court need not consider actual prejudice where a habeas petitioner is unable to show cause, it seems clear here that Durden did not suffer any substantial disadvantage from the alleged errors. *See McCleskey,* 499 U.S. at 502, 111 S.Ct. 1454; *Day,* 459 F.Supp.2d at 256. In his pro se application for reconsideration of the Court of Appeals' denial of leave to appeal, Durden enumerated each of the four grounds raised in his direct appeal. His motion for reconsideration was nevertheless denied. *See People v. Durden,* 3 N.Y.3d 658, 782 N.Y.S.2d 700, 816 N.E.2d 573 (2004). Thus, even assuming Durden could show that appellate counsel's performance was deficient,[11] there is no reason to believe that Durden suffered "actual and substantial prejudice."

Furthermore, Durden offers no new evidence that would establish a miscarriage of justice. "Without new, clearly exculpatory evidence, even a meritorious claim of a constitutional violation may be insufficient grounds for excusing a procedural default." *See Day,* 459 F.Supp.2d at 257

---

11. The Court notes that Everett's application letter for leave to appeal did state that "appellant asks the Court of Appeals to review all of the arguments made to the Appellate Division." Given this language, there seems to be no plausible way to interpret the letter as abandoning the claims not discussed at length in the letter. *Compare Rudenko v. Costello,* 286 F.3d 51, 76 (2d Cir.2002) (leave application letter mentioning only one of three claims "construed as impliedly eschewing further review" of the other two claims) *with Galdamez v. Keane,* 394 F.3d 68, 75 (2d Cir. 2005) (leave application letter "unmistakably requested review of each point in the Appellate Division Brief"). It would thus seem highly unlikely that Durden's ineffective assistance of counsel claim is of sufficient merit to warrant relief under the standard of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (reversal of conviction for ineffective assistance of counsel is warranted where defendant proves (1) counsel's performance was deficient, requiring a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and (2) prejudice to the defense, requiring that counsel's errors were "so serious as to deprive the defendant of a fair trial"). Moreover, since Durden "had no federal constitutional right to counsel for his discretionary appeal to the New York State Court of Appeals, counsel's alleged ineffectiveness on such an appeal does not violate any federal constitutional right to counsel." *Veras v. Strack,* 58 F.Supp.2d 201, 208–09 (S.D.N.Y.1999); *see also Wainwright v. Torna,* 455 U.S. 586, 587, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

*(citing Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Durden merely restates previously raised claims and theories already rejected by the jury at trial and by the appellate courts on Durden's various appeals. His argument thus falls short of the requisite standard of reviewability in a federal habeas court.

## IV. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the petition of Petitioner Tracy Durden ("Durden") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Durden has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**